FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 31, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STACI D.,[1]

      Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of
Social Security,[2]

      Defendant.

No.   4:18-CV-5190-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions. ECF
Nos. 11 & 16. Plaintiff Staci D. appeals a denial of benefits by the Administrative
Law Judge (ALJ). She alleges the ALJ erred by 1) failing to make specific findings

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by
first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.
Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.
Civ. P. 25(d).

at step three, 2) improperly weighing the medical opinions, and 3) discounting Plaintiff's symptom reports. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants Defendant's Motion for Summary Judgment, ECF No. 16.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.     Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of September 30, 2010.[18] Her claims were denied initially and upon reconsideration.[19]

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 15. The relevant period for Plaintiff's Title II claim is from September 30, 2010, the alleged onset date, through December 31, 2015, the date she last met the insurance requirements. AR 15 & 17. For Plaintiff's Title XVI claim, the relevant benefits period began the month following the April 15, 2015 application. 20 C.F.R. § 416.335.

[19] AR 155-63 & 166-72.

An administrative hearing was held before Administrative Law Judge Stephanie Martz.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 30, 2010, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: status-post cervical arthropathy, discectomy, and fusion; left and right first carpometacarpal joint arthritis, status-post left wrist arthroplasty; right middle trigger finger; history of hearing loss; substance use disorder; major depressive disorder vs. adjustment disorder; anxiety disorder, post-traumatic stress disorder; and panic disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  > [She] can lift and/or carry 20 pounds occasionally, and 10 pounds frequently. [She can] sit for about six hours in an eight-hour workday, and stand and/or walk for about six hours in an eight-hour workday, with regular breaks. Moreover, [she] can frequently reach, handle, finger, and feel. [She] has an unlimited ability to balance. [She] can

---

[20] AR 39-76.

frequently stoop, crouch, and crawl. [She] should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards. The noise level in the work environment should be moderate or less, as that is defined by the Dictionary of Occupational Titles (DOT). [She] can understand, remember, and carry out simple tasks. [She] can have superficial contact with coworkers, but should work independently, and not on a team or tandem tasks. [She] cannot work with the general public. [She] would need a routine and predictable work environment with few changes;

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as cleaner housekeeping, assembler (production), and mail clerk.[21]

When assessing the medical-opinion evidence, the ALJ assigned:

- great weight to the examining opinions of Emma Billings, Ph.D. and William Drenguis, M.D.;

- significant weight to the reviewing opinions of John Gilbert, Ph.D. and John Robertson, Ph.D.;

- no weight to Gordon Hale, M.D.'s reviewing opinion as it related to Plaintiff's asthma but significant weight to the remainder of his opinion;

---

[21] AR 18-28.

- both significant weight and little weight to various portions of J. Brooke Sjostrom, LHMC's evaluating opinion, which was co-signed by Thomas Genthe, Ph.D.; and

- little weight to the examining opinions of Rebekah Cline, Psy.D. and Amie Shah, M.D.[22]; the reviewing opinion of Trula Thompson, M.D.; and the treating opinions of Carolyn O'Connor, M.D., and Sean Duffy, M.D.[23]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[22] The ALJ mistakenly referred to Dr. Shah as "Dr. Annie Shah," rather than "Dr. *Amie* Shah." AR 26, 735. This error is inconsequential.

[23] AR 24-27.

[24] AR 22.

[25] AR 1-6 & 295-96.

### III.  Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence and make credibility assessments, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The Court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply that evidence cited by the ALJ or by the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Applicable Law and Analysis

### A.    Step Three (Listings): The ALJ's step-three findings are supported by the record.

Plaintiff argues the ALJ erred at step three by 1) finding that Plaintiff's impairments did not meet the paragraph C criteria for listings 12.02, 12.03, 12.04, 12.06, and 12.15 and 2) failing to make the specific findings.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.[34] The ALJ must support her listings finding with more than a boilerplate finding that a listing was not satisfied: the finding may be supported by the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process" so long as the Court

---

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[34] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4).

can meaningfully review the basis for the step-three decision.[35] To meet a listed impairment, the claimant has the burden of establishing that she meets each characteristic of a listed impairment relevant to her claim.[36]

On this record, the ALJ's listings analysis and findings are adequate and supported by substantial evidence. Focusing on the challenged paragraph C criteria analysis, the ALJ considered Plaintiff's mental impairments singly and in combination and found that they did not meet or medically equal the paragraph C criteria for listings 12.04, 12.06, and 12.15.[37] More specifically, the ALJ found "there is no objective evidence that [Plaintiff's] mental impairments are 'serious and persistent' with medical treatment in a highly structured setting; and a minimal capacity to adapt to changes in the environment, or to the demands that are not already part of daily life."[38] The ALJ also highlighted that "no treating or examining physician has reported clinical findings equivalent in severity to the

---

[35] Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

[36] 20 C.F.R. §§ 404.1525(d), 416.925(d); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

[37] AR 19 & 20.

[38] AR 20.

criteria of any listed impairment, nor does the evidence show medical findings that were the same or equivalent to those of any listed impairment."[39]

These listings findings by the ALJ must be read in conjunction with the entire ALJ decision.[40] Here, the ALJ discussed the medical records and medical opinions related to Plaintiff's mental impairments at great length.[41] The ALJ's analysis in its entirety as to Plaintiff's mental-health impairments permits the Court to meaningfully review the ALJ's finding that Plaintiff's mental impairments did not satisfy the listings paragraph C criteria.

In addition, the ALJ's finding that Plaintiff did not satisfy the paragraph C criteria is reasonable and supported by substantial evidence. The record reflects that Plaintiff has more than a minimal capacity to adapt to changes in the environment and to the demands that are not already part of daily life even when not residing in a substance abuse treatment center, especially so when she is abstinent from drugs.[42]

---

[39] AR 21.

[40] SSR 17-2p.

[41] AR 19-26.

[42] *See, e.g.*, AR 542, 549, 627, 636, 874, 882, 885, 888, 899, 902 (noting that Plaintiff's affect and mood were normal or congruent); AR 776 (noting that Plaintiff was benefiting from therapy and that she appeared "to be functioning rather well and engaged in a variety of activities"); AR 840 (noting that Plaintiff reported her

Finally, because the criteria for the undiscussed listings 12.02 and 12.03 are the same as those required for listings 12.04, 12.06, and 12.15, the ALJ's analysis adequately addressed the requirements for each of the listings challenged by Plaintiff.[43]

Accordingly, the ALJ's listings findings are rational and supported by substantial evidence.

**B.      Medical Opinions: The ALJ's weighing of the medical opinions is supported by the record.**

Plaintiff challenges the ALJ's weighing of the medical opinions as to both Plaintiff's physical (exertional) and mental (non-exertional) limitations.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examined but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[44] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating

---

longest abstinence period was nine months and that she used pills the day she graduated from treatment); AR 848-52 (drug treatment discharge summary); 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00D, G.

[43] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00G.

[44] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

physician.[45] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[46] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[47]

As discussed below, Plaintiff failed to establish that the ALJ's weighing of the medical-opinion evidence was erroneous.

### 1.  Plaintiff's Exertional Limitations

Plaintiff contends the ALJ erred by discounting the treating opinions of Dr. O'Connor and Dr. Duffy and the examining opinion of Dr. Shah, instead giving weight to the examining opinion of Dr. Drenguis and the reviewing opinion of Dr. Hale. Dr. Drenguis and Dr. Hale opined that Plaintiff could perform light work with manipulative and postural limitations, while Dr. Shah, Dr. O'Connor, and Dr. Duffy opined a sedentary-work limitation.[48] While a different rational

---

[45] *Id.*

[46] *Id.*

[47] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[48] Plaintiff did not challenge the ALJ's decision to discount Dr. Thompson's sedentary limitation. The Court highlights that, although Dr. Thompson checked boxes indicating that Plaintiff was limited to sedentary work, Dr. Thompson

interpretation of the medical records could be reached, the ALJ's weighing of the medical opinions as to Plaintiff's physical limitations was reasonable, meaningfully articulated, and supported by substantial evidence.[49]

As to Dr. Shah's opinion, the ALJ discounted Dr. Shah's examining opinion because it was 1) inconsistent with the objective evidence, which did not generally show motor muscle strength loss or limitations in walking and standing; 2) inconsistent with the examination and review of records by Dr. Drenguis the next month; and 3) a check-box opinion. The ALJ reasonably found that Dr. Shah's notes and the longitudinal medical record did not support a sedentary limitation as there was no noted loss of associated muscle strength or walking or standing limitations.[50] In addition, the ALJ reasonably determined that Dr. Shah's check-

_____

stated, "Form shows [Plaintiff] medically at [sedentary] RFC, but based on objective medical, appears most likely to be found at light RFC with some positional and possibly handling restrictions." AR 799.

[49] *See Burch*, 400 F.3d at 679 (recognizing that where the evidence is subject to more than one rational interpretation, the ALJ's interpretation, if reasonable, will be upheld).

[50] *See, e.g.*, AR 733-38; AR 454 (noting that Plaintiff "has chronic musculoskeletal neck pain that . . . [does] not justif[y] chronic narcotic use," as she had well-preserved range of motion, negative straight leg raise, and sensory/motor exam of arms and legs was intact and symmetric); AR 640 (noting neck had normal range of

box sedentary opinion was not consistent with Dr. Drenguis' more detailed findings, which revealed normal muscle strength and motion (other than reduced back and neck range of motion).[51] Plaintiff failed to establish error by the ALJ in giving little weight to Dr. Shah's sedentary opinion.

Likewise, the ALJ reasonably discounted Dr. O'Connor's and Dr. Duffy's treating opinions. The ALJ meaningfully explained that she discounted Dr. O'Connor's opinion because it was 1) inconsistent with Dr. Drenguis' examination; 2) a cursory check-box opinion not supported by either the longitudinal objective medical evidence or Dr. O'Connor's evaluation; and 3) inconsistent with the evidence suggesting drug-seeking behavior.[52] These findings were supported by

---

motion; upper extremities, hips, knees, and ankles were normal; normal gait and balance; and all four extremities moved without difficulty). *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[51] AR 742-45 (Normal "heel-to-shin testing. Station is stable with a negative Romberg. Gate is normal. The claimant could tandem walk and toe-heel walk. She could hop and perform a full squat. She could stand on either leg." Limited back range of motion, but negative straight leg raise and motor strength was 5/5 and bilaterally symmetrical for all major muscle groups of the upper and lower extremities.).

[52] AR 26-27.

substantial evidence. As indicated above, Dr. Drenguis observed normal muscle strength and tone and found Plaintiff had a negative leg raise and full range of motion of her extremities (other than some reduced range of motion in the neck and back). Plaintiff contends that Dr. Drenguis incorrectly diagnosed Plaintiff's cervical impairment as a chronic cervical sprain, thereby impacting his opined limitations, whereas Dr. O'Connor (and Dr. Duffy) diagnosed Plaintiff's cervical condition as more serious. Regardless of the diagnosis for Plaintiff's cervical condition following surgery in 2012, the ALJ reasonably interpreted the objective medical findings, including observations of Plaintiff's normal gait and normal lower and upper extremity muscle strength as inconsistent with Dr. O'Connor's (and Dr. Duffy's) unexplained sedentary-work limitation.[53] In addition, as discussed below, the record reflects that, although Plaintiff has cervical and hand impairments that reasonably caused some pain, the level of pain alleged by Plaintiff was not supported by her normal muscle tone and movement. Moreover, as discussed below, the record suggested drug-seeking behavior by Plaintiff.

Similarly, the ALJ reasonably discounted Dr. Duffy's opinion because it was a cursory check-box opinion, which was inconsistent with Dr. Drenguis'

---

[53] AR 511, 636, & 643 (noting that upper extremities, hips, knees, and ankles were normal, along with normal gait and balance, and ability to move all four extremities without difficulty); AR 526, 532, 542, & 612 (noting same, except neck was supple with slightly decreased range of motion).

observations and opinion and the subsequent progress notes by treating physician Dr. Sandeep Msutta.[54] When Dr. Msutta examined Plaintiff for reported back and hip pain, Dr. Msutta observed normal posture and gait; normal range of motion in Plaintiff's back and knees; full hip strength; and normal hip extension but impeded hip flexion due to pain in low back and anterior hip. For the low back and hip pain, Dr. Msutta recommended gentle stretching and exercises, staying active, and over the counter anti-inflammatory or acetaminophen.[55]

This record contained conflicting medical opinions as to Plaintiff's exertional limitations, i.e., whether Plaintiff was capable of light work with positional and manipulative limitations or whether Plaintiff was only capable of sedentary work with positional and manipulative limitations. It was the ALJ's responsibility to weigh the conflicting medical opinions and the underlying medical records.[56] The ALJ's interpretation of the medical records and opinions as to Plaintiff's physical impairments and finding that the sedentary opinions were not consistent with the record are reasonable, meaningfully articulated, and supported by substantial

---

[54] AR 27. *See Bray*, 554 F.3d at 1228 (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

[55] AR 879-80.

[56] *See Lingenfelter*, 504 F.3d at 1042.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

evidence in the record.[57]  The record reasonably supports the ALJ's light-work RFC, including postural, noise-level, and frequent manipulative limitations.[58] Plaintiff fails to establish the ALJ erred in this regard.

2.   Plaintiff's Non-Exertional Limitations

Plaintiff argues the ALJ erred by discounting the treating opinions of Dr. O'Connor and Dr. Duffy, the examining opinion of Dr. Cline, and a portion of the joint examining opinion of Ms. Sjostrom and Dr. Genthe. While a different rational interpretation of the medical records could be reached, the Court finds the ALJ's weighing of the medical opinions as to Plaintiff's nonexertional limitations was meaningfully articulated, reasonable, and supported by substantial evidence.

a.   *Ms. Sjostrom and Dr. Genthe*

The ALJ discounted Ms. Sjostrom and Dr. Genthe's joint "opinion" that Plaintiff's "general cognitive ability and ability to sustain attention, concentration,

---

[57] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Burch*, 400 F.3d at 679.

[58] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

and mental control was in the borderline range."[59] Plaintiff contends Ms. Sjostrom

and Dr. Genthe's finding that Plaintiff was in the borderline range was an objective

*finding* from the WAIS-IV test—not a medical opinion—and therefore, Plaintiff

argues, without legal citation, it was erroneous for the ALJ to discount this

objective finding. A "medical opinion" is defined as "statements from acceptable

medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions."[60] Here,

the ALJ reasonably considered the joint finding as to Plaintiff's "borderline"

general cognitive ability and ability to sustain attention, concentration, and mental

control to be a medical opinion. Ms. Sjostrom and Dr. Genthe expressed concern

about whether Plaintiff's substance abuse was causing severe disruptions in her

work performance, including the impact it had on Plaintiff's anxiety, which in turn

impacted her concentration and attention span.[61] In this regard, the joint opinion

stated:

> As an example, the respondent presents with certain bizarre and
> dramatic symptoms without the levels of anxiety and wariness in
> dealing with the environment that would be expected to accompany
> these symptoms. Although this pattern does not necessarily indicate a
> level of distortion that would render the test results invalid, the
> interpretive hypotheses presented in this report must be reviewed

---

[59] AR 25.

[60] 20 C.F.R. § 404.1527(a)(1).

[61] AR 434-35.

with this tendency in mind. The scale elevations are likely to over represent the extent and degree of clinical symptomatology in particular areas.[62]

The ALJ's decision to discount the "borderline" opinion because it was inconsistent with the record, including largely normal mental status findings and the inconsistent examining opinion of Dr. Billings, who found that Plaintiff could work so long as she did not have any public contacts, is a reasonable weighing of the joint opinion. Plaintiff failed to establish error in this regard.

      *b.*    *Dr. Cline and Dr. Thompson*

The ALJ discounted Dr. Cline's examining opinion and Dr. Thompson's reviewing opinion because they were inconsistent with 1) the contemporaneous observations and examining medical source opinions of Dr. Billings and Dr. Drenguis, and 2) Plaintiff's reporting to treating psychologist Dr. Baumann.[63] First, Plaintiff argues the ALJ erred by finding that Dr. Cline's opinion was inconsistent with Dr. Billing's opinion. Dr. Billings though found that Plaintiff could work so long as she did not have any public contact. Therefore, Dr. Billings' opinion is inconsistent with Dr. Cline's opinion, which identified that Plaintiff had moderate difficulties following detailed instructions, performing activities within a schedule, maintaining regular attendance, being punctual within customary

---

[62] AR 433.

[63] AR 26.

tolerances without special supervision, adapting to changes in a routine work setting, making simple work-related decisions, being aware of normal hazards and taking appropriate precautions, and setting realistic goals and planning independently; and marked limitations with communication and performing effectively in a work setting, completing a normal work day and work week without interruptions from psychologically based symptoms, and maintaining appropriate behavior in a work setting.[64] That Dr. Cline's and Dr. Thompson's opinions were inconsistent with Dr. Billing's opinion was a legitimate and specific reason to discount these more limiting opinions.

Plaintiff also contends the ALJ failed to explain how Dr. Cline's and Dr. Thompson's opinions were inconsistent with Plaintiff's reporting to treating psychologist Dr. Baumann. This argument is unpersuasive as Dr. Baumann's treatment notes indicated improvement as to Plaintiff's anxiety and mood. Moreover, noticeably absent from Dr. Baumann's notes were observations consistent with marked anxiety or a marked inability to complete a normal workday, communicate, or maintain appropriate behavior.[65]

---

[64] *Compare* AR 728-32 *with* AR 756-63.

[65] AR 26 (citing AR 770, 773, 874, 883, 886, & 893). *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

On this record, the ALJ's decision to discount Dr. Cline's and Dr. Thompson's opinions is rational and supported by substantial evidence.

   *c.* *Dr. Gilbert and Dr. Robertson*

   Plaintiff contends the ALJ erred by failing to incorporate Dr. Gilbert's and Dr. Robertson's reviewing opinions, which included opinions that Plaintiff would have occasional lapses in concentration, persistence, and pace, and would benefit from additional time to adjust to workplace changes.[66] However, Plaintiff's argument fails to appreciate that these state agency reviewing consultants ultimately opined that Plaintiff "is able to perform at least [simple routine tasks (SRT)] in a competitive work environment with occasional lapses in [concentration, persistence, and pace (CPP)], *though CPP remains adequate for SRT.*"[67] Plaintiff fails to establish that Dr. Gilbert and Dr. Robertson intended to use the term "occasional" as it is defined for purposes of *physical* limitations.[68] Moreover, the language used by these doctors indicates that they did not intend to so define occasional but instead found Plaintiff's concentration, persistence and pace was adequate to perform simple, routine tasks. Consistent with Dr. Gilbert's and Dr. Robertson's opinions, the ALJ crafted an RFC that limited Plaintiff to simple tasks and a routine and predictable work environment with few changes.

---

[66] AR 90-92, 107-09, 128-30, & 147-49.

[67] AR 92, 109, 129, & 148 (emphasis added).

[68] *See* SSR 83-10.

Plaintiff failed to establish the ALJ erred in weighing the medical opinions.

**C.     Plaintiff's Symptom Reports: The ALJ's weighing of Plaintiff's symptom reports is supported by the record.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[69] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[70]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.[71] Specifically, the ALJ found Plaintiff's symptom reports inconsistent with her childcaring responsibilities, presentation to numerous medical providers, affirmative evidence

---

[69] *Molina*, 674 F.3d at 1112.

[70] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[71] AR 22-23.

of drug-seeking behavior, and unremarkable objective findings in the medical record.[72]

As to Plaintiff's childcare responsibilities, the Commissioner elected not to rely on this reason as grounds to support the ALJ's decision.[73] The Court agrees that Plaintiff's childcaring responsibilities cannot serve as a clear-and-convincing basis on this record because the ALJ failed to adequately articulate the basis for this finding.[74] However, the ALJ's other findings were supported clear-and-convincing reasons to discount Plaintiff's physical and mental symptom reports.

As to Plaintiff's statements about her disabling hand and neck impairments, the ALJ found these statements inconsistent with the objective medical record.[75] Symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[76] However, medical evidence is a relevant factor in considering the severity of the reported symptoms. [77] In

---

[72] *Id.*

[73] ECF No. 16 at 10, n.2.

[74] *See Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017) (The record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity.).

[75] AR 22.

[76] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[77] *Id.*

contrast to Plaintiff's reported disabling symptoms due to her hand and neck

impairments, the ALJ found that the medical evidence supported a finding that

Plaintiff was able to perform light duty work with postural and frequent

manipulation limitations. This finding is rational and supported by substantial

evidence. As the ALJ highlighted, while imaging supported that Plaintiff's hand

and neck conditions were severe impairments, the medical records indicated that

Plaintiff's range of motion and strength were generally normal or, if limited, the

deficits were mild and not as severely disabling as Plaintiff claimed.[78] For instance,

the ALJ highlighted that although Plaintiff had cervical, low thoracic, and upper

lumbar spine tenderness along with hand tenderness, she had full grip strength, a

negative straight leg raise, normal muscle bulk and tone with full motor strength

and bilateral symmetry in all major muscle groups of the upper and lower

extremities.[79] On this record, that Plaintiff's reports of disabling neck and hand

---

[78] AR 22.

[79] AR 741. *See also* AR 447-48 (Post surgery records reflecting that Plaintiff was

doing well, her station was upright, gait stable, good strength in both upper

extremities, and good grip strength.); AR 452-53 (noting good range of motion in all

major joints although tender to palpation over the left posterior neck; axial

compression on the cervical spine did not reproduce left arm symptoms; slightly

diminished muscle strength in left arm compared to right); AR 454 (After observing

that Plaintiff had well-preserved range of motion, mild left mid cervical

pain were inconsistent with the objective medical evidence was a relevant factor for the ALJ to consider when weighing Plaintiff's symptom reports.

Plaintiff correctly highlights that the ALJ's pin cites fail to cite to medical records containing the specific page with the physical or musculoskeletal findings. However, this citation error is harmless, because when the medical record is read in its entirety, the ALJ's finding that Plaintiff's disabling neck and back pain reports were inconsistent with the providers' observations and tests is supported by the record.[80] Moreover, the ALJ's analysis and citations—although slightly off

---

paraspinous tenderness, mild pain with axial compression of the vertebral column noted in the neck, and mild lumbosacral paraspinous tenderness, the provider stated that Plaintiff "has chronic musculoskeletal neck pain that I do not believe justifies chronic narcotic use."); AR 463 (noting normal upper extremities strength, 4/5 hand grip on left and 5/5 hand grip on right, normal gait, normal muscle town in all four extremities, Spurling's test positive to the left); AR 766 (noting strong and equal bilateral grip).

[80] *See Lingenfelter*, 504 F.3d at 1035 (The Court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply that evidence cited by the ALJ or by the parties.); *Black*, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

numerically—allowed this Court to engage in a meaningful review of the basis for the ALJ's findings.

Plaintiff also argues that the ALJ failed to rely on "objective medical evidence" to support her findings. "Objective medical evidence" means "signs, laboratory findings, or both.[81] In turn, "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques."[82] Evidence obtained from the application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[83] Here, the ALJ appropriately relied on the medical providers' observations regarding Plaintiff's range of motion, strength, and gait as objective medical evidence. As discussed previously, the ALJ rationally interpreted the objective medical evidence as inconsistent with Plaintiff's claims of physical disability.

The ALJ also discounted Plaintiff's symptom claims, both physical and mental claims, because Plaintiff's statements about her abstinence from substance

---

[81] 20 C.F.R. § 404.1502(f).

[82] *Id.* § 404.1502(g).

[83] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

use were not reliable and her actions suggested drug-seeking behavior—calling into question her veracity and the severity of her reported limitations.[84] Drug-seeking behavior can be a clear and convincing reason to discount a claimant's reported symptoms.[85] On this record, the ALJ's finding that Plaintiff gave inconsistent statements about her abstinence from substance use and drug-seeking behavior is clear and convincing and supported by substantial evidence. The record reflects that Plaintiff continued to abuse substances even when she claimed she was not using and failed to seek treatment from and establish a relationship with a

---

[84] AR 23. Plaintiff contends the ALJ failed to provide findings for discounting Plaintiff's disabling mental health symptoms and instead only discounted her testimony about her physical limitations. This argument fails to recognize that the ALJ discounted both Plaintiff's reported physical and mental symptoms because her statements about her substance use were unreliable and her actions suggested drug-seeking behavior. AR 23. Furthermore, the ALJ found Plaintiff's mental symptom reports inconsistent with the objective findings of Dr. Billings. AR 23 (citing AR 756-63, Dr. Billings' psychological assessment).

[85] *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug seeking behavior undermines a claimant's reported symptoms); *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010) (recognizing that evidence of drug-seeking behavior is a valid reason for discounting a claimant's symptom claims).

chronic pain specialist as directed by her treating physician.[86] Plaintiff contends the ALJ misrepresented aspects of the record in reaching this conclusion and highlights that Dr. O'Connor had prescribed narcotics to Plaintiff for over a year, thereby supporting Plaintiff's argument that Dr. O'Connor considered Plaintiff's pain to be legitimate. However, the ALJ's interpretation of Dr. O'Connor's medical records and the remaining record—that Plaintiff's pain was not so severe as to require the continued prescription of narcotics, or that if it was, Plaintiff failed to follow the medical advice of seeking treatment from a chronic pain provider, and moreover that her largely normal mobility, strength, and muscle tone indicated that her pain was not as disabling as she claimed it to be is supported by

---

[86] *See, e.g.,*, AR 518-22 (Nov. 2014: noting that Plaintiff reported that she went to the pain clinic and was not happy with the consultation as she felt "they suggested she was using pain medication for her anxiety"); AR 508-12 (Jan. 2015: detailing that Plaintiff was upset with her treatment provider that she could not provide a urine sample when she wanted to and actually had not followed through with referral to pain center, instead failing to show for her appointment at the pain center on three different occasions); AR 568-70 (Feb. 2015: Instead of seeking care for her claimed chronic pain from a pain center as directed by Dr. O'Connor, Plaintiff instead sought treatment from a new medical provider without providing the new provider with her medical records from Dr. O'Connor.); AR 492 (March 2015: urine positive for amphetamines, cannabinoids, and methamphetamines).

substantial evidence and serves as a clear and convincing reason to discount

Plaintiff's reported symptoms.

The ALJ also reasonably considered that Plaintiff's disabling mental

limitations were inconsistent with Dr. Billings' examining opinion.[87] The only non-

exertional limitation that Dr. Billings opined was that Plaintiff was "unable to

work in any capacity requiring public contact due to her Posttraumatic Stress

Disorder and anxiety."[88] The RFC is consistent with Dr. Billings' opinion, which

was clearly contrary to Plaintiff's reported disabling mental limitations.

In summary, Plaintiff failed to establish the ALJ erred by discounting

Plaintiff's symptom reports.

## V.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.     The Clerk's Office is directed to substitute Andrew M. Saul,
       Commissioner of Social Security, as the Defendant.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3.     The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is
       **GRANTED**.

---

[87] AR 23 (citing AR 756-63).

[88] AR 763.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 30th day of October 2019.

                 _____
                       s/Edward F. Shea
                       EDWARD F. SHEA
             Senior United States District Judge